IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

SHAWALTO WATTS,                  :
                                 :
        Plaintiff,               :      CIVIL ACTION 10-0384-WS-M
                                 :
v.                               :
                                 :
DALLAS COUNTY JAIL, et al.,      :
                                 :
        Defendants.              :

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis* filed a Complaint and Amended Complaints under 42 U.S.C. § 1983 (Docs. 1, 6, 18). This action was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants' Motion for Summary Judgment (Docs. 14, 17), and Plaintiff's opposition thereto (Doc. 26). After consideration of the pleadings and the evidence presented by the parties, and for the reasons set forth below, it is recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's action against these Defendants be dismissed with prejudice.

I.   SUMMARY OF THE FACTS

1.   From its review of the record, the Court summarizes the parties' allegations which are material to the issues

addressed in this Report and Recommendation, and takes the
following as fact.

2.     At the time of the incident made the basis of this
litigation, Plaintiff was detained at the Dallas County Jail
(Doc. 1, p. 4).  Plaintiff began his detention on April 14, 2010
when he was brought to the jail for violating his parole (Doc.
17-7).[1]

3.     Starting on April 28, 2010, Plaintiff complained of an
abscess in his mouth, and this complaint continued throughout
Plaintiff's detainment and incarceration (Doc. 1, p. 4).  On May
5, 2010, a medical history was taken of the Plaintiff, and at
that time he appeared to be in good health (Doc. 17-9).  At the
May 5, 2010 examination no dental problems were noted to be seen
at that time (Doc. 17-9, p. 3). According to the Plaintiff,
after his health visit, he complained to Defendants David Brown
and Wilamena Phillips that he needed to see a dentist (Doc. 1,

---

[1] The Court notes that the Plaintiff was detained for
violation of his parole, and was not a pre-trail detainee; thus,
the Court will analyze Plaintiff's claims under the scope of the
Eighth Amendment. *See Smith v. Leonard*, 2008 WL 1912804
(S.D.Tex. 2008). *See also Hathcock v. Armor Correctional Health
Services*, Inc., 186 Fed.Appx. 962, 963 n.1 (11th Cir. 2006).
("Although the record is unclear as to whether Hathcock was a
pre-trial detainee during the events, the distinction is
immaterial. The Eighth Amendment standard, applicable to
prisoners, and the Fourteenth Amendment standard, applicable to
pre-trial detainees, are the same. *Marsh v. Butler County*, 268
F.3d 1014, 1024 n. 5 (11th Cir.2001) (en banc ); *Lancaster v.
Monroe County*, 116 F.3d 1419, 1425 (11th Cir.1997)").

p. 7).  Later in the day, Plaintiff also complained to Defendant
Officer Richard Waugh and Sergeant Lunnie about his tooth ache
(Doc. 1, p. 8).

3.    Plaintiff submitted a request to see a medical doctor
on May 16, 2010 (Doc. 17-13).  Three days later on May 19, 2010,
Plaintiff was sent to see Defendant Dr. Chudy Okoye ("Dr.
Okoye") (Doc. 17-3).  The doctor examined the Plaintiff, and did
not see any medical or dental need "which would justify any type
of treatment that could not be given to him at Dallas County
Detention Center" (Doc. 17-3, p. 2).  The doctor directed
Plaintiff to request over-the-counter medicine from the jail
(*Id.*).  The doctor did not prescribe medication for the
Plaintiff (*Id.*).  Plaintiff states that Dr. Okoye told Plaintiff
he was not a dentist, and did not prescribe Plaintiff penicillin
(*see* Doc. 26, p. 6).[2]  Also on May 19, 2010, an Intake Booking
Screening Form was completed on the Plaintiff during his
examination (Doc. 17-10).  No abnormalities were noted, and when
asked by the detention center staff if he had any other medical

---

[2] Plaintiff also claims that on that same day, Officer Smith
"threatened to mace Plaintiff if he continued to ask for
medicine, and proceeded to carry Plaintiff back to [his] cell
and locked him back up." (Doc. 26, p. 3).  However, Officer Smith
is not a named Defendant in this action, and it is unclear from
the record whether Plaintiff had already received medication
that day or not.  However, this alleged threat from Officer
Smith did not effect Plaintiff since Plaintiff made continuous
requests for medical attention (*see* Docs. 1, 6, 18).

problems they had not asked about, Plaintiff replied only that he had bronchitis *and did not mention any dental problems* (Doc. 17-10).

    4.    After seeing Dr. Okoye, Plaintiff continued to complain to members of the jail staff about his tooth (Doc. 17-2).[3] The jail staff told the Plaintiff he should make a request for medical care and try to see the doctor again (Doc. 17-2). However, Plaintiff refused to see Dr. Okoye (Doc. 17-2). Plaintiff was then told that he could schedule an appointment with a private dentist, but would be required to pay a fee as it was elective treatment (*see* Doc. 17-5).

    5.    On July 14, 2010 Plaintiff was ordered to serve the remainder of his sentence in the Detention Center, with a scheduled release of November 26, 2010 (Doc. 17-8).  On or about July 21, 2010, Plaintiff filed his complaint (Doc. 1).

    6.    On or about July 27, 2010, the Plaintiff's abscess burst (Doc. 6, p. 4).

    7.    An appointment for the Plaintiff with a private dentist was scheduled for August 2, 2010 (*see* Doc. 17-11). However, the appointment was not kept because Plaintiff did not

---

[3] The Court notes that Plaintiff's wife, Ceceila Watts, also made verbal complaints to the Dallas County Jail staff to request dental assistance for Plaintiff (Doc. 26, pp. 13-14).

pay the required fee even though Plaintiff had access to funds to cover the fee (*see* Doc. 17-11; Doc. 17-12).

8.   On November 7, 2010, Plaintiff made a written request to see the Warden without stating a specific need to do so other than indicating it was "urgent" dated November 7, 2010 (Doc. 39-2).

9.   On or about November 10, 2010, personnel noticed for the *first time* that Plaintiff's cheek was swelling, and the jail nurse scheduled an appointment for the Plaintiff to see a dentist (Doc. 39-1).

10.  Plaintiff was seen by Dr. I.B. Hopson on November 15, 2010 (Doc. 39-1; Doc. 18).  Dr. Hopson took an X-ray and prescribed Plaintiff an antibiotic (Doc. 39-1).  This appointment was paid for by the Dallas County Jail (Doc. 26, p. 4).  Plaintiff states that he was not given his prescribed medicine as of November 17, 2010 (Doc. 18), but such was specifically given to him during his incarceration (Doc. 39-1), which means he was given his medication between November 17, 2010 and November 26, 2010.

11.  The Plaintiff's release date was November 26, 2010, and the Plaintiff was indeed released from the Dallas County Jail, at the latest, by December 3, 2010 (*see* Doc. 20; Doc. 17, p. 2; Doc. 17-8).

12.    Subsequent to Plaintiff's release, he saw Dr. Hopson
again on December 12, 2010 and December 27, 2010 when he was
again prescribed antibiotics (Doc. 26, p. 22).  Plaintiff does
not allege, and the record does not reflect, that Plaintiff
sustained any life-long handicap or permanent loss as a result
of any treatment or non-treatment while at the Dallas County
Jail.

## II. PROCEDURAL HISTORY

1.    On July 21, 2010, Plaintiff filed the present § 1983
action against Defendants Dallas County Jail, Wilamena Phillips
(Chief Matron at Dallas County Detention Center)("Phillips"),
Dr. Chudy Okoye ("Dr. Okoye"), Richard Waugh (Correctional
Officer at Dallas County Detention Center)("Waugh"), David Brown
(Sergeant at Dallas County Detention Center)("Brown"), Steve
Coleman (Correctional Officer at Dallas County Detention
Center)("Coleman"), and Roger Goodman (Lieutenant and Warden at
the Dallas County Detention Center)("Goodman") alleging denial
of proper medical treatment for his dental problem (Doc. 1).

2.    Initially in Plaintiff's Complaint, he claims that he
was "denied medical attention" causing him "pain and suffering,"
for which he seeks "pain and suffering payments and medical
expenses" (Doc. 1, p. 7-8).

3.    On August 10, 2010, Plaintiff filed an Amended
Complaint wherein he claims that after an abscess had burst in

his mouth, he did not receive medical attention and requested an award of "pain and suffering in the amount of $3,500.00 per night starting from April 28, 2010 up to the time [Plaintiff is] provided medical attention or to [his] release date, which ever comes first." (Doc. 6, p. 7).

4.    In their Answer to the Amended Complaint and Special Report, Defendants deny Plaintiff's allegations and assert the defenses of absolute and qualified immunity (Docs. 14, 17).[4]

5.    Plaintiff also makes a broad claim against the Dallas County Jail, as follows:

> the Dallas County Jail and each of its named employees and/or contract agents were ***negligent*** with respect to providing him needed medical attention, and exhibits extreme and outrageous conduct by their failure to have him attended by a dentist when they knew that he was in great pain from an abscessed tooth and infected gum . . . [and] he suffered great pain over an unreasonable period of time and Dallas County jail and its employees are responsible for his harm and should be liable for their ***neglectful*** conduct.

(Doc. 26, p. 4)(emphasis added).

6.    On February 28, 2011, the Court ordered that Defendants' Special Report and Answer be treated as a Motion for Summary Judgment (Doc. 25).  Defendants' motion and Plaintiff's

---

[4] Defendants set forth various immunities as affirmative defenses. However, since the Court finds herein that Plaintiff's allegations related to his lack of medical treatment do not establish a constitutional violation, there is no need to make further inquiry as to immunity.

response in opposition thereto (Doc. 26) are now before the
Court.

### III.   SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary
judgment, the Court begins with these basic principles.  The
Federal Rules of Civil Procedure grant this Court authority
under Rule 56 to render "judgment as a matter of law" to a party
who moves for summary judgment.  It is well-established that
summary judgment is proper-consistent with Federal Rule of Civil
Procedure 56(c)-"if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a
judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477
U.S. 317, 322 (1986).  The Court must view the evidence produced
by "the nonmoving party, and all factual inferences arising from
it, in the light most favorable to" that party.  *Barfield v.
Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).  However, Rule
56(e) states that:

> If a party fails to properly support an assertion of
> fact or fails to properly address another party's
> assertion of fact as required by Rule 56(c), the court
> may:
>
> > (1) give an opportunity to properly support or
> > address the fact;
> > (2) consider the fact undisputed for purposes of
> > the motion;

8

> (3) grant summary judgment if the motion and
> supporting materials--including the facts
> considered undisputed--show that the movant is
> entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

## IV. DISCUSSION

As discussed above, Plaintiff seeks redress in this action pursuant to 42 U.S.C. § 1983 for an alleged constitutional deprivation arising out of his dental complaints commencing from April 28, 2010 while he was detained in the Dallas County Jail (Doc. 1). Plaintiff claims the Defendants unconstitutionally deprived him and/or unreasonably delayed dental treatment since his first complaint commencing on or about April 28, 2010. Section 1983 provides in pertinent part that:

Every person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State
or Territory or the District of Columbia, subjects, or
causes to be subjected, any citizen of the United
States or other person within the jurisdiction thereof
to the deprivation of any rights, privileges, or
immunities secured by the Constitution and laws, shall
be liable to the party injured in an action at law,
suit in equity, or other proper proceeding for
redress. . . .

42 U.S.C. § 1983 (1994).

In addressing Plaintiff's claims brought under § 1983, the
Court begins its analysis "by identifying the specific
constitutional right allegedly infringed. . . ." *Graham v.
Connor*, 490 U.S. 386, 394 (1989). The Eighth Amendment provides
that, "[e]xcessive bail shall not be required, nor excessive
fines imposed, nor cruel and unusual punishments inflicted."
U.S. Const. amend. VIII. "The Eighth Amendment's proscription
of cruel and unusual punishments prohibits prison officials from
exhibiting deliberate indifference to prisoners' serious medical
needs." *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999)
(citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In *Sims v.
Mashburn*, 25 F.3d 980 (11th Cir. 1994), the Eleventh Circuit
delineated the objective and subjective portions of an Eighth
Amendment claim as follows:

An Eighth Amendment claim is said to have two
components, an objective component, which inquires
whether the alleged wrongdoing was objectively harmful
enough to establish a constitutional violation, and a
subjective component, which inquires whether the

> officials acted with a sufficiently culpable state of
> mind.

*Sims*, 25 F.3d at 983 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).  To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff first must demonstrate the existence of an "objectively serious medical need."  *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Id.* (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) overruled on other grounds in *Marsh v. Butler County*, *Ala.*, 268 F.3d 1014, 1031 n. 8 (11th Cir. 2001)).  "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm."  *Id.*  (internal quotation marks and citation omitted).

In order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Plaintiff must demonstrate "deliberate indifference" to a serious medical need. *Farrow*, 320 F.3d at 1243.  "Deliberate indifference" entails more than mere negligence.  *Estelle*, 429 U.S. at 106; *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  "When a prison inmate has received medical care, courts hesitate to find an Eighth

Amendment violation." *Waldrop v. Evans*, 871 F.2d 1030, 1035

(11th Cir. 1989).

> The Supreme Court clarified the "deliberate
> indifference" standard in Farmer by holding that a
> prison official cannot be found deliberately
> indifferent under the Eighth Amendment "unless the
> official *knows of* and *disregards an excessive risk to*
> *inmate health or safety;* the official must both be
> aware of facts from which the inference could be drawn
> that a substantial risk of serious harm exists, and he
> must also draw the inference." Farmer, 511 U.S. at
> 837, 114 S. Ct. 1970 (emphasis added). In
> interpreting Farmer and Estelle, this Court explained
> in McElligott that "deliberate indifference has three
> components: (1) subjective knowledge of a risk of
> serious harm; (2) disregard of that risk; (3) by
> conduct that is more than mere negligence."
> McElligott, 182 F.3d at 1255; Taylor, 221 F.3d at 1258
> (stating that defendant must have subjective awareness
> of an "objectively serious need" and that his response
> must constitute "an objectively insufficient response
> to that need").

*Farrow*, 320 F.3d at 1245-46 (emphasis in original).

"Delay in access to medical attention can violate the

Eighth Amendment . . . when it is tantamount to unnecessary and

wanton infliction of pain." *Hill*, 40 F.3d at 1187 (internal

citations and quotation marks omitted). "Cases stating a

constitutional claim for immediate or emergency medical

attention have concerned medical needs that are obvious even to

a layperson because they involve life-threatening conditions or

situations where it is apparent that delay would detrimentally

exacerbate the medical problem." *Id.*

The "seriousness" of an inmate's medical needs also
may be decided by reference to the *effect* of delay in
treatment. *Gaudreault*, 923 F.2d at 208; *Monmouth
County*, 834 F.2d at 347. Where the delay results in
an inmate's suffering "**_a life-long handicap or
permanent loss_**, the medical need is considered
serious." *Id*. **_An inmate who complains that delay in
medical treatment rose to a constitutional violation
must place verifying medical evidence in the record to
establish the detrimental effect of delay in medical
treatment to succeed_**. Further, we have held that
"[t]he tolerable length of delay in providing medical
attention depends on the nature of the medical need
and the *reason* for the delay." *Harris v. Coweta
County*, 21 F.3d 388, 393-94 (11th Cir. 1994) (emphasis
added). Consequently, delay in medical treatment must
be interpreted in the context of the seriousness of
the medical need, deciding whether the delay worsened
the medical condition, and considering the reason for
delay.

*Hill*, 40 F.3d at 1188-89 (emphasis in original and added)

(footnotes omitted). Patients in the free world often

experience similar delays when seeking treatment of non-life-

threatening injuries or ailments. *Jackson v. Benjamin*, 2011 WL

1789992, *6 (S.D. Ala.,2011).

Also, "[i]t is well-established that a difference in

opinion or a disagreement between an inmate and prison officials

as to what medical care is appropriate for his particular

condition does not state a claim for deliberate indifference to

medical needs." *Del Muro v. Federal Bureau of Prisons*, 2004 WL

1542216, *4 (N.D. Tex. 2004) (unpublished). As to "the question

of whether governmental actors should have employed additional

diagnostic techniques or forms of treatment 'is a classic

13

example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995)(quoting *Estelle*, 429 U.S. at 107). Additionally, solely showing negligence or medical malpractice is "not sufficient" to constitute deliberate indifference. *See Mandel v. Doe*, 888 F. 2d 783, 787-88 (11th Cir. 1989).

A.   Serious Medical Need

The Court first turns to the objective component of the two-part test to determine whether there has been a constitutional violation of the inmate's rights, namely, whether Plaintiff possessed an objectively serious medical need. *Farrow*, 320 F.3d 1235 at 1243. Plaintiff started making verbal complaints about his tooth on or about April 28, 2010 (Doc. 1, p. 4). Seven days later, on May 5, 2010, an initial medical history and examination took place, and no dental problems were noted (Doc. 17-9, p. 3). Plaintiff continued his verbal complaints despite the finding that there were no dental problems noted at the May 5, 2010 examination (Doc. 1, pp. 7-8). Plaintiff submitted a written request for medical treatment on May 16, 2010 (Doc. 17-13), and three days later was seen by Dr. Okoye (Doc. 17-3). The doctor examined the Plaintiff, and stated as follows:

> [O]n May 19, 2010 I examined that Plaintiff on that
> date and as a part of that examination included an
> evaluation of the Plaintiff's mouth and dental needs.
> It was my opinion that the Plaintiff's dental needs
> did not present any type of medical problem which
> would justify any type of treatment that could not be
> given to him at the Dallas County Detention Center. I
> told the Plaintiff to request over-the-counter pain
> medication from members of the jail staff, which are
> freely given out upon request.

(Doc. 17-3, p. 2). After being seen by Dr. Okoye, Plaintiff

continued to complain about his dental issue (Doc. 17-2). On

May 19, 2010 at the inmate booking screening, no abnormalities

were noted, and even when asked about any issues not mentioned,

Plaintiff did not state there was a problem with his tooth (Doc.

17-10). Due to Plaintiff's subsequent continuous complaints,

the jail staff told Plaintiff he should make a request for

medical care and try to see the doctor again, but Plaintiff

refused because he did not want to see Dr. Okoye (Doc. 17-10).

Prior to November 2010, there was no visible, obvious medical

need seen by the jail staff (Doc. 39-1). As soon as the staff

noticed swelling in Plaintiff's cheek on or about November 10,

2010 (Doc. 26, p. 18), an appointment was scheduled immediately

for the Plaintiff to see Dr. Hopson without Plaintiff needing to

write and submit a written request (Doc. 39-1). Plaintiff saw

dentist Dr. Hopson on November 15, 2010, and the Dallas County

Jail paid the fee for the visit (Doc. 26, p. 4; Doc. 18; Doc.

39-4, p. 3). Subsequent to his release, Plaintiff has not

stated that he has suffered any serious health problem as a
result of this treatment or lack thereof while in the Dallas
County Jail (*see* Doc. 26).

A serious medical need is a need that: (1) a doctor has
diagnosed as mandating treatment, or (2) is obvious even to a
lay person that a physician's attention is required. *Id.* "In
either of these situations, the medical need must be one that,
if left unattended, pos[es] a substantial risk of serious harm."
*Id.* (internal quotation marks and citation omitted). Prior to
November 10, 2010, Plaintiff did not have a serious need given
that at three prior examinations (May 5, 2010 examination, May
19, 2010 visit with Dr. Okoye, and May 19, 2010 inmate booking
screening), he did not appear to have a serious dental problem.
Specifically, a medical expert, Dr. Okoye did not see where
Plaintiff had a serious medical problem (Doc. 17-3). Plaintiff
claims his abscess burst on or about July 27, 2010 (Doc. 6, p.
4). However, from a review of the record, Plaintiff did not
make a written request to see Dr. Okoye or any doctor, even
though previously when he had made a written request he received
medical attention within 3 days of his request. It is evident
from the record that Plaintiff knew how to complete a written
request to see a doctor, and was successful in his previous
effort in seeing a doctor when he had submitted a written
request. From the record, it appears that Plaintiff himself did

not deem the abscess bursting as a serious medical need since he did not fill out a written request to see a doctor. Accordingly, the Court finds that there was no serious medical need prior to November 10, 2010.

## B.   Deliberate Indifference

The Court next turns to the second, subjective element of Plaintiff's claim, that is, whether Defendants were deliberately indifferent to Plaintiff's serious medical need.  Plaintiff claims that the Defendants in this action were deliberately indifferent to his serious medical need as follows: (1) Defendant Phillips delayed Plaintiff from seeing a doctor immediately upon Plaintiff's verbal complaints commencing on April 28, 2010 (Doc. 1); (2) Dr. Okoye did not prescribe the Plaintiff penicillin and did not direct Plaintiff to be seen by a dentist (Doc. 1); (3) Defendant Brown did not take Plaintiff to the dentist upon Plaintiff's request in July 2010 (Doc. 6, p. 5); (4) Defendant Coleman did not take Plaintiff to the emergency room upon Plaintiff's request in July 2010 (Doc. 6, p. 5); (5) Defendant Goodman did not allow Plaintiff to be seen by the private dentist as scheduled on August 2, 2010 (Doc. 6); (6) Defendant Waugh did not give Plaintiff medication as requested in May 2010 and July 2010 (Doc. 1, pp. 5-6, 8); and (7) staff at

the Dallas County Jail failed to give Plaintiff medicine
promptly after his November 15, 2010 dental visit (Doc. 18) and
the Dallas County Jail and its employees "should be liable for
their neglectful conduct" because they failed to have him
attended to by a dentist so that the Plaintiff suffered pain for
an extended period of time (Docs. 1, 6, 16, 26).  The Court
disagrees.

### 1. Defendant Phillips

In order to constitute "deliberate indifference,"
Defendants must have known of and disregarded an excessive risk
to Plaintiff's health.  *Farrow*, 320 F.3d at 1245.  Plaintiff
claims that Defendant Phillips delayed Plaintiff from seeing a
doctor immediately upon his verbal complaints commencing on
April 28, 2010, which violated his constitutional rights (Doc.
1).  First, at Plaintiff's initial health examination and
medical history on May 5, 2010, which was seven days after his
initial verbal complaints, no dental problems were noted or seen
(Doc. 17-9). Defendant Phillips would have no reason to know of
and disregard an excessive risk since such was not borne out
from the initial examination on May 5, 2010, and any such health
issue was not observable by him or to the examiner on May 5,
2010.  Second, Plaintiff received medical treatment three days
after his written medical request. (Doc. 17, p. 9; Doc. 17-3).
Third, Plaintiff has failed to place verifying medical evidence

to show that this short delay caused any detrimental effect. *See*
*Hill*, 40 F.3d at 1188.  Therefore, Defendant Phillips was not
deliberately indifferent to Plaintiff's medical need, and did
not violate Plaintiff's constitutional rights.

   2.   Dr. Okoye

   Plaintiff claims that since Dr. Okoye did not prescribe the
Plaintiff penicillin and did not refer Plaintiff to be seen by a
dentist, Dr. Okoye was deliberately indifferent to Plaintiff's
medical need (Doc. 1).  However, Dr. Okoye examined the
Plaintiff on May 19, 2010, and found that the Plaintiff had no
medical need "which would justify any type of treatment that
could be not be given to him at the Dallas County Detention
Center" (Doc. 17-3, p. 2).  Plaintiff, in essence, contests Dr.
Okoye's treatment and medical decision.  "It is well-established
that a difference in opinion or a disagreement between an inmate
and prison officials as to what medical care is appropriate for
his particular condition does not state a claim for deliberate
indifference to medical needs." *Del Muro v. Federal Bureau of*
*Prisons*, 2004 WL 1542216, *4 (N.D. Tex. 2004) (unpublished).
Plaintiff's claim against Dr. Okoye is a "classic example of
matter for medical judgment." *See Adams*, 61 F.3d at 1545
(quotation and citation omitted).  Therefore, Dr. Okoye was not
deliberately indifferent to Plaintiff's medical need, and did
not violate Plaintiff's constitutional rights.

### 3.   Defendant Brown and Defendant Coleman

Plaintiff claims that Defendant Brown was deliberately indifferent to Plaintiff's medical need because he did not take Plaintiff to the dentist in July 2010 (Doc. 6, p. 5).  Plaintiff claims that Defendant Coleman was deliberately indifferent to Plaintiff's medical needs since he did not take Plaintiff to the emergency room per Plaintiff's request in July 2010 (Doc. 6, p. 5).

First, mere disagreement between an inmate and prison official about medical treatment does not give rise to deliberate indifference. *See Del Muro*, 2004 WL 1542216 at *4. Whether Plaintiff needed to be taken to the dentist or the emergency room immediately or not was a question of judgment. Prior to Plaintiff's complaints to Defendants Brown and Coleman, Dr. Okoye had already decided that Plaintiff did not need to see a dentist or go to the emergency room (*see* Doc. 17-3).  Second, there was no visible serious medical need for Plaintiff to see a dentist prior to November 2010, as discussed above.  Therefore, the Court finds that Defendants Brown and Coleman were not deliberately indifferent to Plaintiff's serious medical need, and did not violate Plaintiff's constitutional rights.

### 4.   Defendant Goodman

Plaintiff claims that Defendant Goodman was deliberately indifferent to Plaintiff's medical needs because Goodman did not

allow Plaintiff to be seen by the private dentist as scheduled
on August 2, 2010 (Doc. 6, pp. 5-6). However, Defendant Goodman
is not at fault for Plaintiff not seeing the private dentist
since Plaintiff himself failed to pay the required fee, and this
failure to pay the fee was the reason for the appointment
cancellation (*see* Docs. 17-5, 17-11). Second, as stated above,
Plaintiff did not have a serious medical need prior to November
10, 2010. Therefore, Defendant Goodman did not act deliberately
indifferent to Plaintiff's serious medical need,and did not
violate Plaintiff's constitutional rights.

### 5. Defendant Waugh

Plaintiff claims that Defendant Waugh was deliberately
indifferent to Plaintiff's medical need since he failed to give
Plaintiff medication on several occasions in May 2010 and July
2010 (Doc. 1, pp. 5-6). While the Court finds it disturbing
that Plaintiff would have been in discomfort without the over-
the-counter pain medication, this fact alone is not sufficient
to establish a constitutional violation. First, Plaintiff has
not proffered any actual evidence which demonstrates an attitude
of deliberate indifference rather than negligence on the part of
Defendant Waugh. Second, Plaintiff has not submitted any
"verifying medical evidence" showing that delay in medical
treatment, including receipt of medication, resulted in a
detrimental physical effect. *Hill*, 40 F.3d at 1188. Third, it

does not appear that there was any serious medical need prior to
November 10, 2010.  Fourth, even patients in the free world
often experience similar delays when seeking treatment of non-
life-threatening injuries or ailments.  *See Jackson v.
Benjamin*, 2011 WL 1789992, *6 (S.D. Ala.,2011). Therefore,
Defendant Waugh did not act deliberately indifferent to
Plaintiff's serious medical need, and did not violate
Plaintiff's constitutional rights.

        6.   Dallas County Jail and its staff

        Plaintiff claims that the Dallas County Jail and its
employees "should be liable for their neglectful conduct" by
failing to have him attended to by a dentist so that the
Plaintiff suffered pain for an extended period of time (Doc. 26,
p. 4). Additionally, Plaintiff claims that after his November
15, 2010 dental visit, jail staff failed to give him his
prescribed medication (*see* Doc. 18).

        First, Plaintiff states in his complaint that Defendants
were negligent in taking him to the dentist (see Doc. 26, p. 4),
but mere negligence is not sufficient to support a
constitutional claim.  *See Mandel v. Doe*, 888 F. 2d 783, 787-88
(11th Cir. 1989) (solely showing negligence or medical
malpractice  is"not sufficient" to constitute deliberate
indifference).  Additionally, when an "inmate has received
medical care, courts hesitate to find an Eighth Amendment

22

violation." *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989).

Second, Plaintiff has not proffered any actual evidence which suggests an attitude of deliberate indifference on the part of Defendants in getting him medical attention.

Third, Plaintiff has not submitted any "verifying medical evidence" showing that delay in medical treatment, including receipt of medication, resulted in a detrimental physical effect. *Hill*, 40 F.3d at 1188. Jail staff did indeed administer the prescription antibiotic to Plaintiff subsequent to Plaintiff's filing in November 17, 2010 but prior to his release on November 26, 2010 (*see* Doc. 39-1). Plaintiff has not shown where any short delay in receiving his prescribed antibiotic has resulted in Plaintiff suffering "a life-long handicap or permanent loss." *See id.* at 1188-89. Therefore, Defendant Dallas County Jail and its staff did not act deliberately indifferent to Plaintiff's serious medical need, and did not violate Plaintiff's constitutional rights.

V.   CONCLUSION

Since no constitutional violation has been established based on the foregoing, the Court concludes that Defendants Dallas County Jail, Wilamena Phillips, Dr. Chudy Okoye, Richard Waugh, David Brown, Steve Coleman, and Roger Goodman are

entitled to summary judgment in their favor on all claims asserted against them by Plaintiff.

Accordingly, it is recommended that the Motion for Summary Judgment of the Defendants be GRANTED and that the entirety of Plaintiff's Complaint against these Defendants be DISMISSED with prejudice.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 5th day of October, 2011.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   Objection.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982) (en banc).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days15 after being served with a copy of the recommendation,

unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   Transcript (applicable Where Proceedings Tape Recorded).  Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.